# W. B. HUNT, Administrator of Estate of MRS. W. B. HUNT, v. W. E. SANDERS, Appellant.

### Division One, March 12, 1926.

1. **WARRANTIES: Express or Implied: Election: Sales.** The buyer of a chattel, as to which an express warranty has been given by the seller and which has been breached, has no choice as to whether he will sue for the breach of that warranty or the breach of one implied by law covering the same subject-matter. Where the warranty expressly agreed upon is precisely the same as the one the law would imply from the mere fact of sale, in case of breach, it is of no consequence whether the warranty be regarded as express or as implied. Hence, where defendant sold to plaintiff notes secured by deed of trust, indorsed by the payee in blank, which defendant represented to be "absolutely gilt edge," and they proved to be forgeries, and plaintiff sues for the amount of money paid defendant for the notes and deed of trust, plaintiff has a right to have submitted to the jury as a basis of recovery any theory of fact warranted by the evidence as a whole which will support the allegations of his pleading, and the defendant is not entitled to compel him to elect between an express and an implied warranty.

2. ————: **Disclosed Principal: Personal Liability of Agent.** Where an agent contracts on behalf of a disclosed or known principal, in reference to matters within the scope of his agency and within the scope of the authority conferred on him, the legal presumption is that he intended to, bind his principal, and not himself personally. Therefore, an instruction telling the jury that if they find that "the defendant expressly warranted to plaintiff the validity of the notes and deed of trust" bought by plaintiff from defendant, "and the plaintiff relied on said warranty, and the said notes and deed of trust were forgeries, then plaintiff is entitled to recover from the defendant the money paid by plaintiff for the notes and deed of trust, even though the defendant did tell the plaintiff at the time of the sale that A. B. Wilgus was the owner of said note and that he was merely acting as the agent of said Wilgus," is clearly erroneous.

3. **SALE: Forged Notes: Knowledge and Good Faith of Vendor: Credibility.** In a suit by the purchaser of forged notes of the nominal value of fifteen hundred dollars against a seller for the amount of money paid him for them, the defendant should be permitted to

Hunt v. Sanders.

testify that at the time of the several sales he had no knowledge of any fact that would impeach their genuineness, not because his innocence or good faith constitutes a defense, but because if he knew they were forgeries he was guilty of a felony, and that fact affects his credibility as a witness and entitles him to disavow knowledge.

4. ———: ———: Custom: Check to Vendor. In a suit by the purchaser of notes from a loan agent for the amount of money paid him for forged notes it was not error to exclude evidence offered by defendant tending to show a custom that agents in selling loans take checks in their own names in payment therefor, where defendant testified that he "made objection to making the checks payable to him, but the plaintiff said he already had the checks made out and he wanted to know who was getting the loan for him." According to this testimony the checks were not made payable to defendant pursuant to any custom.

Agency, 2 C. J., Section 486, p. 812, n. 92; Section 487, p. 813, n. 97. Brokers, 9 C. J., Section 161, p. 679, n. 40. Evidence, 22 C. J., Section 116, p. 176, n. 93. Pleading, 31 Cyc., p. 654, n. 68. Sales, 35 Cyc., p. 392, n. 74, 76; p. 484, n. 3. Trial, 38 Cyc., p. 1626, n. 69. Witnesses, 40 Cyc., p. 2651, n. 84 New.

Appeal from Jasper Circuit Court.—*Hon. Grant Emerson*, Judge.

REVERSED AND REMANDED.

*Owen & Davis, Norman A. Cox* and *Hugh Dabbs* for appellant.

(1) One who sells notes as owner or as agent of an undisclosed principal, may be held on either an express warranty as to the genuineness of the notes, or on an implied warranty as to their genuineness, but not on both, for they embrace the same matter, and the express warranty excludes the implied warranty. Therefore, where plaintiff sues on a warranty of one who sells as owner or as agent of an undisclosed principal, and the petition is broad enough to cover both express and implied warranty as to the same subject-matter, he must elect whether he will base his right to recovery on express or implied warranty, and for the court not to require him to do is error. One who sells notes as agent of a disclosed principal, can-

not be held liable on a warranty of the genuineness of the notes whether the warranty is express or implied, for the warranty is then conclusively presumed to be the warranty of his principal.  Where one sells as agent of a disclosed principal, he can only be held liable, personally, on his own personal agreement to be liable on a warranty of the genuineness of the notes, and in this case, the warranty must be an express one.  Huston v. Tyler, 140 Mo. 363; International Co. v. Smith, 17 Mo. App. 264; Fruit & Truck Assn. v. Hartman, 146 Mo. App. 168; 2 Meechem on Sales, p. 1095, sec. 1295; Thompson, Payne & Co. v. Irwin & Co., 76 Mo. App. 430; Registry Co. v. Supply Co., 207 Mo. App. 462; Michael v. Jones, 84 Mo. 582; 13 C. J. p. 243, sec. 9.  (2)  Plaintiff, in her instruction numbered six, submitted her case to the jury on her evidence and theory of an express warranty, on the theory that defendant disclosed to plaintiff defendant's principal, Wilgus, and told plaintiff that Wilgus owned the notes.  In such case, the law presumes the warranty of the agent as to the quality of the thing sold to be the warranty of his principal, and the agent, if acting in good faith, cannot be held, personally, on the warranty, unless the agent goes further and agrees himself to be bound, and he is informed that credit is extended to him alone; and the burden of proof to establish this collateral agreement of the agent is on the plaintiff.  Instruction numbered six is not within the allegations of the petition and does not present to the jury for finding any facts on which such a collateral agreement on the part of defendant to be personally bound can be predicated, or any facts on which to base a finding that plaintiff extended credit to defendant and informed defendant of that fact, but, as given, that instruction charges a warranty by an agent of a disclosed principal, of a matter within the scope of his agency, which binds only the principal, and not the agent, the defendant here, and said instruction, in telling the jury to find for the plaintiff and against the defendant, constituted reversible error.  2 Clark & Skyles on Agency (1905 Ed.)

p. 1221, sec. 565; 21 R. C. L. p. 846, sec. 25; Thompson, Payne & Co. v. Irwin & Co., 76 Mo. App. 430; Sprague v. Rosenbaum, 38 Fed. 386; Curtis v. Miller, 50 L. R. A. (N. S.) 604; Wilder v. Cowles, 100 Mass. 490; Steamship Co. v. Transportation Co., 135 Mass. 421; Dahlstrom v. Gemunder, 19 Am. & Eng. Ann. Cas. 771, 198 N. Y. 449; Huston v. Tyler, 140 Mo. 363; Anderson v. Timberlake, 62 Am. St. 105; Fruit & Truck Assn. v. Hartman, 146 Mo. App. 168; 1 Meechem on Agency, sec. 1422; Michael v. Jones, 84 Mo. 582; Hunt v. Sanders, 288 Mo. 351; Ellis v. Stone, L. R. A. 1916F, 1228; 31 Cyc. 1552-3; State ex rel. v. Ellison, 272 Mo. 583. (3) The matter of the good faith of the agent in making express warranties as to quality, where he discloses his principal, is an element of the agent's defense against personal liability on the warranties, and the court committed reversible error in refusing to permit defendant to introduce evidence to show that at the time he sold the notes in question to plaintiff (his defense being that he sold them as agent of a disclosed principal) that he did not know that the notes were forged, and that he believed them to be genuine. Huston v. Tyler, 140 Mo. 268; Dahlstrom v. Gemunder, 19 Am. & Eng. Ann. Cas. 771; Lang v. Friedman, 166 Mo. App. 362; Roemer Co. v. Annan, 81 Mo. App. 572; Thompson, Payne & Co. v. Irwin Co., 76 Mo. App. 434; Michael v. Jones, 84 Mo. 582; Bank v. Orthwein, 160 Mo. App. 369; Tillman v. Bungenstock, 185 Mo. App. 66. Defendant offered to prove by other real estate and loan agents that it was the custom, in the district, where an agent sold a loan for his principal, to have the check made payable to the agent, who would deduct his commission and pay over the balance to the principal. The evidence offered was competent.

*Haywood Scott* for respondent.

(1) The rules of pleading require that matters should be pleaded according to their legal effect, and general allegations of warranty are sufficient without stating

whether it is expressed or implied; and although the warranty be implied by law, yet when the implication arises from a statement made it is an express warranty. Long Bros. v. The J. K. Armsby Co., 43 Mo. App. 253; Hoe v. Sanborn, 21 N. Y. 352, 1 Smith Leading Cases (9 Am. Ed.) 329; Hawkins v. Pemberton, 51 N. Y. 198. (a) Either an express warranty or one implied by law could be shown to sustain the allegations of the petition in this case. Hunt v. Sanders, 288 Mo. 337. (b) It is only where an implied warranty is inconsistent with an express warranty that all implied warranties are merged in or are superseded by the express warranty. Natl. Cash Register Co. v. Layton, 207 Mo. App. 462; Boulware v. Victor Auto Mfg. Co., 163 Mo. App. 524; Fairbanks, Morse & Co. v. Baskett, 98 Mo. App. 53; Miller & Co. v. Hunter, 82 Mo. App. 632; Acme Harv. Machine Co. v. Gasperson, 168 Mo. App. 558. (c) The jury were instructed to the effect that plaintiff was entitled to recover either on an implied warranty or on an express warranty. The express warranty was not inconsistent with the implied warranty. It merely expressly stated that the paper was genuine, a warranty which the law implied under the circumstances of this case. Hunt v. Sanders, 288 Mo. 337. (2) Instruction 6 was in accordance with the allegations of the petition and was supported by the evidence, partly by the plaintiff's evidence and partly by the defendant's evidence. It was based on an express warranty of the genuineness of the paper sold by defendant to plaintiff. The warranty of genuineness of the paper sold implied by law under the circumstances does not conflict with the defendant's express warranty of genuineness of the paper and it did the defendant no harm for the court to instruct the jury that the plaintiff could recover on either an implied warranty or an express warranty. The defendant was liable on the implied warranty if he did not disclose his agency or his principal, and he was also liable on an express warranty if he did not disclose his agency or his principal or if he did disclose his agency or his principal.

It is immaterial which instructions the jury followed if the defendant was liable under all of them. This court has decided that he was so liable. The trial court followed this court's opinion on the first appeal. Questions fully considered and decided by this court in the former appeal will not, upon a second appeal, be open to dispute or further controversy. Hunt v. Sanders, 288 Mo. 337; Hombs v. Corbin, 34 Mo. App. 393; Crecelius v. Bierman, 68 Mo. App. 34. Respondent testified that appellant did not disclose his agency or his principal and that appellant expressly warranted the genuineness of the paper sold and that respondent relied on such warranty in purchasing the paper from appellant. Under this testimony alone, appellant was liable either on an implied or the express warranty, regardless of whether or not he disclosed his agency or his principal; and appellant cannot complain because Instruction 6 is also asked and given based on appellant's testimony as well as that of respondent. Wilder v. Cowles, 100 Mass. 487. (3) Appellant contends that he should have been permitted "to introduce evidence to show that at the time he sold the notes in question to plaintiff that he did not know that the notes were forged, and that he believed them to be genuine." The trial court, in the second trial of this case, followed this court's opinion in the former appeal in ruling on this point. Had defendant, in the second trial, been permitted to introduce such testimony, such action on the part of the court in admitting the testimony, would, of course, have led the jury to believe that such testimony constituted a defense to plaintiff's cause of action and would have tended to cause the jury to return a verdict for the defendant. It had that effect in the first trial of this case. This question was before this court on the first appeal, was fully considered and decided and should not again be open to dispute or further controversy. Hunt v. Sanders, 288 Mo. 337; Hombs v. Corbin, 34 Mo. App. 393; Crecelius v. Bierman, 68 Mo. App. 34. (4) An agent who enters into a contract without disclosing his

principal renders himself personally liable even though the third person knows he is acting as agent, unless it affirmatively appears that it was the mutual intention of the parties to the contract that the agent should not be bound. Porter v. Merrill, 138 Mo. 555; Neely v. State, 60 Ark. 66, 27 L. R. A. 503; Welch v. Goodwin, 123 Mass. 71; Cobb v. Knapp, 71 N. Y. 348; Horan v. Hughes, 129 Fed. 248; Armstrong v. Brolaski, 46 Fed. 903.

RAGLAND, P. J.—This is the second appeal in this case. The first is reported in 288 Missouri Reports at page 337 and following. The action is one to recover with interest the several sums paid for five negotiable promissory notes which subsequently proved to be forgeries. The purchase of each note constituted a separate transaction. The petition is correspondingly in five counts. As the basis for the recovery sought each alleges: "That defendant sold and delivered to plaintiff and plaintiff purchased from defendant what purported to be and what defendant then warranted to be, and plaintiff relying upon such warranty believed to be, a good and valid promissory note; . . . that said note and deed of trust are of no value whatever, and that the signatures to said note, as well as the signatures to the deed of trust purporting to secure said note on said property, are forgeries." The answer as to each count is a general denial.

This suit was originally begun by Mrs. W. B. Hunt; she has since died, and the cause has been revived in the name of her husband as administrator of her estate. All of the negotiations relative to the purchase of the notes in question were conducted by him as her agent. In the statement of facts with respect to such negotiations which follows, he will be referred to as plaintiff, instead of as agent of his intestate. This in aid of brevity and clarity of statement.

The facts necessary to an understanding of the questions involved which plaintiff's evidence tended to show may be briefly stated as follows:

At the time of the transactions giving rise to the controversy plaintiff and defendant were residents of the city of Joplin. Plaintiff was a clerk or salesman in a retail clothing store; defendant was engaged in the real estate business and in selling mortgage loans. The latter officed in an upper story of the building where the former was employed. One day in November, 1917, defendant came into the clothing store, and plaintiff said to him: "If you have any good loans, we have some money to loan." A few days later defendant told plaintiff that he had a loan of $1500 on 2130 Pennsylvania, in the city of Joplin. Shortly afterward plaintiff went to see the property and after inspecting it told defendant he would take the loan. Defendant then exhibited to plaintiff for his acceptance documents purporting to be a promissory note for $1500; a deed of trust conveying the real estate which plaintiff had viewed and securing the note; an abstract of the title to such real estate; and a policy of insurance covering the buildings thereon. The note purported to have been signed: "Alvin H. Schmidt; Lola E. Schmidt;" to be payable to "Gilbert W. Weatherly;" and to have been indorsed by Weatherly to one R. K. Pitkin and by Pitkin in blank. In this connection we quote from plaintiff's testimony: "I told him I had never had any experience in making loans and didn't know anything about papers and I am depending upon you to know if these papers are all right and if you don't know they are all right I don't want the loan at all. He says, 'These papers are absolutely gilt edge, I know they are, you needn't worry one minute; they are absolutely gilt edge.' And I gave him a check for this loan." The check given was for $1500 and was payable to the order of defendant, W. E. Sanders.

Following the transaction just detailed there were four other sales by defendant to plaintiff of what in each case purported to be a promissory note secured by a deed of trust on Joplin real estate. These sales were conducted in the same manner in all respects as the first.

In each instance a check was given payable to the order of Sanders, the defendant, and in each instance plaintiff was assured by defendant that "the papers are all right." Three of these notes purported to be payable to A. B. Wilgus, Jr., and bore the indorsement:

"Without recourse payable to the order of ———
                                   "A. B. WILGUS, JR."

The fourth purported to be payable to M. M. Harutun and purported to have been indorsed by him in the form just set out. All five of the notes as well as the deeds of trust purporting to have been given to secure them were forgeries.

The negotiations which culminated in the several sales were had between plaintiff and defendant, no one else participating therein. Defendant conducted such negotiations on his part as though he were the owner of the purported securities. He at no time gave plaintiff an intimation that he was not the owner or that he was acting for another in disposing of them. Plaintiff on his part, having no knowledge to the contrary, assumed that defendant was the owner and acting for himself.

Defendant testified that in making the sales he was acting as the agent of A. B. Wilgus, Jr.; that he had no other interest in the subject-matter of the sales; and that he not only disclosed to plaintiff that he was merely Wilgus's agent, but that the several sales were in fact brought to consummation by Wilgus in person after defendant had brought Wilgus and plaintiff together. Defendant denied that he told plaintiff that the papers were all right or that they were "gilt-edge." He stated that on the contrary he advised plaintiff to have an attorney examine them for him. In addition to his own testimony defendant introduced other evidence which tended to show that as to some of the sales at least the negotiations were carried on between plaintiff and Wilgus in person.

While testifying as a witness defendant was asked by his own counsel whether at the time the sales were made to plaintiff he (defendant) knew "that there was

313 Mo. Sup.—12.

any question of any loans made by A. B. Wilgus, Jr.?''
The question was objected to by plaintiff on the ground
that the good faith of the defendant was not in issue,
and the objection was sustained. Defendant also offered
to prove that ''in all cases where the agent is selling
loans belonging to his principal in this district or in this
town, it is the universal custom and practice for the
agent . . . to have the purchaser make the check
in the name of the agent.'' Plaintiff objected that the
proffered evidence was irrelevant and immaterial and was
sustained.

At the beginning of the trial defendant requested
that plaintiff be required to elect whether he would try
his case on the theory of express warranty or that of im-
plied warranty. The court refused to require such an
election. At the conclusion of the taking of the evidence
the defendant asked that all evidence relating to express
warranty be stricken out. This request was likewise
denied.

The first five instructions given for plaintiff, one ap-
plicable to each count of the petition, submitted the case
to the jury on the theory of implied warranty. Instruc-
tion numbered one will illustrate:

''The court instructs the jury that if you find and
believe from the evidence in this case that the defendant,
as owner, or as agent for an undisclosed principal, sold to
plaintiff a certain note, dated June 23, 1914, for the prin-
cipal sum of $1500, purporting to be signed by Alvin H.
Schmidt and Lola E. Schmidt, and which said note pur-
ported to have been secured by a deed of trust upon lot
numbered eighty in Schifferdecker's Second Addition to
the City of Joplin, and that said note and deed of trust
are forgeries, then you will find the issues in favor of the
plaintiff on the first count of plaintiff's petition, and as-
sess her damages at the sum paid for said note, not ex-
ceeding the sum of $1510, with interest thereon at the
rate of six per cent per annum from date of demand there-
for from defendant, if you find there was a demand, and

if you find there was no demand, then from the date of filing suit, to-wit, December 20, 1918.''

Following the five instructions given on the theory of implied warranty the court by plaintiff's instruction numbered six told the jury that if they found that ''the defendant expressly warranted to plaintiff the validity of the notes and deeds of trust in question, or any of them, and the plaintiff relied on said warranty, if any, and the said notes and deeds of trust were forgeries, then the plaintiff is entitled to recover from the defendant the money paid by plaintiff for the notes and deeds of trust, or note and deed of trust, so warranted and relied on, if any, even though the defendant did tell the plaintiff at the time of the sale that A. B. Wilgus, Jr., was the owner of such note and that he was merely acting as agent for said Wilgus.''

The jury found for plaintiff on each count of the petition. From the judgment entered in conformity therewith the defendant prosecutes this appeal.

Appellant predicates error on the following rulings of the trial court: (1) the overruling of defendant's motion to require plaintiff to elect between the theory of express warranty and that of implied warranty, and the refusal later to strike out the evidence relating to express warranty; (2) the giving of instruction numbered six; (3) the refusal to allow defendant to testify that at the times of the several sales of notes to plaintiff he had no knowledge of any fact which would impeach their genuineness; and (4) the exclusion of the evidence tending to show a custom that agents in selling loans take checks given in payment therefor in their own names.

I.   On any theory of this case the doctrine of election of remedies is wholly inapplicable. The buyer of a chattel as to which an express warranty has been given by the seller and which has been breached has no choice as

to whether he will sue for the breach of that warranty or the breach of one implied by law covering the same subject-matter. The express warranty as to the particulars included within its terms excludes an implied warranty. [Fruit & Truck Assn. v. Hartman, 146 Mo. App. 155, ·168; Pavement Co. v. Smith, 17 Mo. App. 264.] The rule that an express warranty excludes an implied warranty contemplates, however, that the stipulated warranty shall in some respect differ from the one which the law would imply in the absence of an express agreement. Where the warranty expressly agreed upon is precisely the same as the one the law would imply from the mere fact of sale, in case of breach it can be of no consequence whether the warranty be regarded as express or as implied. In such case the distinction is without importance except as to the matter of proof. In the case at bar proof that defendant sold the notes as owner or as the agent of an undisclosed principal would be sufficient·to establish the warranty pleaded. Such warranty would likewise be established by proof that defendant even though the agent of a disclosed principal expressly and with the intention of binding himself personally warranted the notes to be genuine. The fact that the allegations of plaintiff's petition would be supported by proof of either of these two, in some respects inconsistent, states of fact did not put him to an election. He had the right to have submitted to the jury as a basis of recovery any theory of fact warranted by the evidence as a whole which would support the allegations of his pleading. Though the jury should find against him as to his contention that the defendant did not disclose his principal, he would still be entitled to recover if they further found that the defendant with the intention of binding himself personally expressly warranted the notes to be valid. [Esstman v. Railways Co., 216 S. W. 526.] Appellant's contentions under this head are overruled.

*Warranty: Express and Implied: Election.* [side note]

II.   Instruction numbered six was clearly erroneous. On the facts therein hypothesized the warranty was that of Wilgus, the principal, and not that of his agent, the defendant. The applicable rule of law finds expression in a standard text as follows:

*Disclosed Principal.*

"Where an agent contracts on behalf of a disclosed or known principal, in reference to matters within the scope of his agency, and within the scope of the authority conferred upon him, there is always a legal presumption that he intended to bind his principal and not himself personally, and that credit is extended to the principal and not to the agent; and unless credit has been given to the agent expressly or exclusively, and it was clearly his intention to assume a personal responsibility, and this is shown by clear and explicit evidence, the agent will not be personally liable on such contract." [2 Clark & Skyles on Agency, p. 1221.] As already intimated the vital question in the case is whether the defendant warranted the notes to be what they purported to be. If he sold the notes as owner or as the agent of an undisclosed principal, the warranty by implication of law is his; if he disclosed his principal and notwithstanding personally warranted the notes to be genuine, the warranty is his. The instruction required the jury to find that the "defendant expressly warranted, etc.," but at the same time it assumed that the defendant "was merely acting as the agent for said Wilgus." It should have gone further and required a finding that defendant in expressly warranting the validity of the notes intended to bind himself personally.

III.   It is true as the trial court ruled and as we held on the former appeal that the defendant's good faith, as to the transactions involved in the sales of the notes is not in issue. On further consideration, however, we are persuaded that the ruling should be viewed from another angle.   Plaintiff's evidence tended to show that defendant was in possession of, and sold

*Forged Notes: Knowledge: Good Faith of Seller: Credibility.*

as owner, forged notes. If at the time he knew that the notes were forged he was guilty of a felony. In this situation he should have been accorded the right to disavow any such knowledge. Not because his innocence or good faith would constitute a defense to the action, but because of its bearing on his credibility as a witness. The evidence by a proper instruction could have been limited to that purpose.

IV. With respect to the reason why the checks given in payment for the notes were made payable to the defendant, he testified: "I made objection to the making of the checks to me. Mr. Hunt said he already had the check made out and he had made other loans and he wanted to know who was getting the loan for him." It thus appears from defendant's own testimony that the checks were not made payable to him pursuant to a local custom, but merely to satisfy a peculiar notion of plaintiff's. Such testimony afforded a sufficient ground if there were no other for rejecting the proffered evidence as to the existence of the alleged custom.

Custom.

There are criticisms of other instructions given for plaintiff but we find them without merit.

Because of the error in giving instruction numbered six the judgment is reversed and the cause remanded. All concur.